UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RIMMA VAKS | I |
| Plaintiff, | I |
|  | I |
| v. | I |
|  | I |
| TOM QUINLAN, DORIAN LEBLANC and | I |
| LUMIRADX | I |
| Defendants | I |
|  | I |

Civil Action
1:18-cv-12571-LTS
JURY TRIAL DEMAND

# MEMORANDUM IN SUPPORT PLAINTIFF'S MOTION TO COMPEL DISCOVERY

## I.  SUMMARY OF ARGUMENT AND RELIEF REQUESTED

Defendant failed and refused to reveal information in its possession and have abused the discovery in the following respects: (1) failing to disclose information under FRCP 26(a); (2) refusing to provide Interrogatory responses; (3) refusing to provide Production responses and (4) refusing to admit; and (4) obstructing deposition.  "In employment discrimination cases, the discovery allowed is even more broad, `[b]ecause employers rarely leave a paper trial -or "smoking gun"-attesting to a discriminatory intent, [therefore] disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence."[1] Defendant's relentless refusal to produce documents and information deprives Plaintiff of evidence most relevant to Plaintiff's claims and Defendant's affirmative defenses in order to develop her case.

The goal of Plaintiff's discovery was to establish facts that Defendant discriminated Plaintiff by (a) treating her differently than younger similarly situated employees, (b) failing to promote her, (c) failing to investigate her harassment and retaliation complaints, (e) replacing one of her job responsibilities with the younger man, (f) continuing looking for a replacement for her second job responsibility; (g) subjecting her to unrelenting ongoing harassment in retaliation for her whistleblowing; (d) failing to stop and remedy ongoing harassment and (e) violating its own policies to allow ongoing harassment. Plaintiff was also seeking to discover facts related to her retaliation claims after Defendant took adverse action against Plaintiff for complaining about

---

[1] *Rivera v. Forwarding,* D.P.R. 2011(quoting *Vázquez-Fernández v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 155 (D.P.R. 2000) (quoting *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990)); see also 8 The Late Charles Alan Wright, et al., Federal Practice and Procedure § 2009.2 (3d ed)).

ongoing harassment. Furthermore, Plaintiff goal was to discover facts related to Defendant's *affirmative defenses* that: (a) "The allegations in Plaintiff's Second Amended Complaint ("SAC") fail to state a claim for relief that is plausible on its face under the ADEA. The evidence put forth thus far is wholly insufficient to support a claim under the ADEA", (b) "Plaintiff's own performance contributed to her termination… Plaintiff's management style and means of communication with her colleagues led to complaints from numerous colleagues, as well as resignations from colleagues…Plaintiff was insubordinate towards her superiors and created a hostile work environment within her department"; (c) "the status Defendant's business at the time of Plaintiff's termination" was the reason for her termination (Attachment A, pp.11-15).

Defendant's responses to production of documents, interrogatories and admissions are critically deficient in several ways: (a) it produced only limited number of documents *in non-conforming* with FCRP 34(b)(2)(E) format; (b) Defendant failed its burden to object to discovery requests with specificity required by Rules 33 and 34; (c) Defendant claimed broad and Generic Objections with boilerplate invocations of privilege, burden and overbreadth so that Plaintiff cannot ascertain whether responsive documents are being withheld or not; (d) Defendant withheld critical documents and information; (e) despite of numerous objection based on privilege, Defendant failed its burden to establish the existence of privilege and to list and describe documents withheld on that ground. Defendant's discovery responses or lack of ones leave Plaintiff without relevant information to develop her evidence and an opportunity to litigate her case. Defendant egregiously obstructed the legitimate discovery process, and as of the date of the filing of this motion, Defendant still has made almost no production.

Furthermore, Defendant committed multiple violations of the Rule 30 (Exhibit A).

Because Defendant defiantly in bad faith violated every Federal Rule of Civil Procedures related to discovery process and failed to comply with its discovery obligations, Plaintiff is asking this Court to compel discovery in compliance with Federal Rules and to sanction Defendant for violations of these Rules. Specifically, Plaintiff is asking the Court to Compel Defendant to (1) to produce documents in required by Federal Rules format; (2) to describe all withheld documents; (3) to produce documents it withheld based on "privilege"; (4) to complete answers to Plaintiff's interrogatories; (5) to order additional deposition under Rule 30(b)(6) since Defendant did not prepare topics of the Notice;  (7) to sanction Defendant under the Rule 30(d)(2) and Rule 37; and (8) to sanction Defendant's counsels under the Rule 26(g).

"Principles of due process require court to impose Rule 37 sanctions if defendant refuses to produce documents which are essential for plaintiff to prove his allegations or for plaintiff to negate defendant's defense; sanctions are not imposed as deterrent or punishment alone, rather, sanctions relieve plaintiff of burden he should not have to bear without documents." *Black v. United States*, 389 F. Supp. 529 (D.C.D.C. 1975)

## II. BACKGROUND

1. On June 4, 2019, Plaintiff sent her First Request for Production of Documents.

2. On July 8, 2019, Defendant sent a Proposed Motion for Protective Order and Responses to the Production Request. The responses contained only boilerplate objections with **_NO_** documents or timeframe for producing them. In the Motion for Protective Order Defendant asked to protect confidentiality of personal and financial data.

3. On July 10, 2019, only after Plaintiff's initiated conference Defendant agreed to produce some documents by 07/12/2019.

4. On July 12, 2019, Defendant produced limited number of unindexed *images* of documents without any metadata in spite of Plaintiff's direction to produce documents in "natural format". Many images were duplicated several times to create an impression of voluminous of the production. Defendant excluded attachments of ESI files.

5. On July 19, 2019, after Plaintiff's objection to the format of produced documents, Defendant produced unindexed and externally unsearchable format which precludes organizing and searching for documents. (Attachment B).

6. During months of July and August in spite of Plaintiff's objections to the format, Defendant defiantly and obstinately refused to produce documents in the format requested by Plaintiff and required by Federal Rules.

7. Because Defendant refused to amend its production, on August 31, 2019, Plaintiff sent a formal detail letter describing specific deficiency to Defendant asking to provide relevant to her litigation documents (Attachment C).

8. Since Plaintiff did not receive requested documents, on September 1, 2019, two days pass the deadline, but before the Court ruled on the Motion for Protective Order, Plaintiff sent the Second Request for Production seeking the relevant information.

9.  On September 3, 2019 the Court allowed the Motion for Protective Order. Notably, this decision came after August 30, 2019 deadline for Request for Production and before Defendant made any proper production.

10. On September 9, 2019, Plaintiff held a conference call with Defendant once again asking to provide her with requested information.

11. On September 13, 2019, Defendant sent supplemental production of documents per the Court's order. However, about 80% of documents were duplicates of the first production only marked as "Confidential". While Defendant in its Motion for Protective Order was seeking to protect financial and private information, it produced **_no_** documents containing claimed confidentiality.

12. On September 16, 2019, Plaintiff sent another formal letter to Defendant asking for production in compliance with discovery rules (Attachment D).

13. Only on September 18, 2019, Defendant provided an incompliant so called "privilege log" file and a "metadata" file which provided no inherent capability to organize and search produced documents (Attachments E, F).

14. On September 30, 2019, Plaintiff submitted nineteen (19) Requests for Admissions.

15. On October 3, 2019, Plaintiff filed a Motion for Leave to file Second Request for Production that was sent to Defendant on September 1, 2019 two days pass the deadline for Production of Documents (August 30, 2019).

16. On October 18, 2019, the Court denied Plaintiff's Motion for Leave to file Second Request for Production.

17. On October 18, 2019, Plaintiff, sent a Rule 30(b)(1) Notice of Deposition to Defendant's managing agent Tom Quinlan with five (5) request for production of documents.

18. On October 30, 2019, Defendant deposed Plaintiff. During the deposition Defendant revealed that several documents were withheld from Plaintiff.

19. On October 30, 2019, Defendant submitted "Response to Plaintiff's Requests for Admission".  In its responses Defendant defiantly mocked Plaintiff's requests and blanketly improperly denied vast majority of the requests (Attachment N).

20. On November 18, 2019, Defendant produced "Responses and Objections to Plaintiffs' FRCP 30(b)(1) Notice of Deposition to Tom Quinlan". Once again, Defendant refused to produce any requested documents.

21. On November 22, 2019, absent Defendant's Motion for Protective Order to limit topics the Court allowed limitation on the topics of the Rule 30(b)(6) deposition.

22. On November 25, 2019, Plaintiff deposed two party's witnesses. Defendant's designee, Dorian LeBlanc, was not prepared to testify on limited topics allowed by the Court and made several violations sanctionable under Rule 30(d) violations.

23. On December 2, 2019, absent of the Court's order, Defendant failed to produce for deposition three non-party witnesses that Plaintiff subpoenaed on November 7, 2019.

    During 6 months of discovery, via several telephone conversations and numerous email correspondence, Plaintiff has attempted to resolve the above-described deficiencies of the discovery requests. Defendant has been unwilling to compromise on any point and continues stonewalling and resisting discovery. This unrelenting resistance and obstructionism is sanctionable under Rule 30 and 37.

## III. LEGAL STANDARD

The party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant. *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136, D.N.H. 2005. Relevancy in this context "has been construed broadly", *Green*, 2015 WL 9594287, at *2. Once a showing of relevance under Rule 26(b)(1) has been made, the objecting party bears the burden of persuasion that a discovery request is improper. The party must demonstrate that requested discovery does "not come within the broad scope of relevance defined pursuant to Rule 26(b)(1)". *Continental Western Insur. Co. v. Opechee Constr. Corp*., D.N.H., 2016. Federal Rule of Evidence 401 provides that evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and where "the fact is of consequence in determining the action." "Relevance in discovery is broader than relevance at trial; during discovery, `a broad range of potentially useful information should be allowed' when it pertains to issues raised by the parties' claims." *Bank of Am., Nat'l Ass'n v. Wells Fargo Bank, N.A.,* 2014 WL 3639190, at *3 (N.D. Ill. 2014) (quoting *N.L.R.B. v. Pfizer, Inc.,* 763 F.2d 887, 889-90 (7th Cir. 1985)). Plaintiffs in employment and civil rights actions have little relevant information, while defendants hold all the important information and possess most of the evidence revealing of which is only possible through discovery. In employment cases discovery ***is the only way*** to develop the necessary evidence.

6

Here Defendant's resistance to reveal requested documents and information deprives Plaintiff of a meaningful opportunity to develop her case and litigate the merits. Defendant's failure to comply with discovery falls within the "willfulness or bad faith" analysis and caused substantial prejudice in the litigation. Defendant uses discovery devices to harass, cause delay, and wear down Plaintiff. Defendant stonewalls and opposes otherwise proper discovery requests in order to frustrate Plaintiff and to prevent disclosing relevant materials by hindering the adjudication process and making the task of the deciding tribunal not easier but more difficult.

## IV. DEFENDANT'S MULTIPLE VIOLATIONS OF DISCOVERY RULES

### 1.   Failure to produce documents in format required by FRCP 34(b)(2)(E)

After Plaintiff's strong objection to the Defendant's First Production of unindexed _images_ of documents, Defendant "fixed" production by providing unindexed documents in unattainable for external search and sort format. This so-called "effort" was fruitless - such production did not make "organization of the documents" possible. For months Defendant bluntly and defiantly refused to comply with Rule 34(b)(2)(E) while asserting that "we have satisfied our responsibility by producing documents as they were kept in the usual course of business"(Attachment G). In its recent decision the Mass. Dist. Court in _Echavarria v. Roach, Dist._, 16-cv-11118-ADB, decided by reviewing FRCP 34(b)(2)(E), that the Rule provides two options for producing ESI: a party may "produce documents as they are kept in the usual course of business" or otherwise, it "must organize and label" documents to correspond with the request for production. The first option is "only available when the documents' natural organization makes finding critical documents reasonably possible." _Id_. The producing party bears the burden of demonstrating that ESI has a "natural organization" that renders it navigable. The court held that Echavarria's production did not comply with the rule as he failed to meet the burden of demonstrating that the files had a "natural organization" that made it "reasonably possible" to find documents. _Echavarria,_ at *3-4. Consequently, the Court ordered to "amend their non-conforming productions. _Id_. Furthermore, the form of production cannot be _degraded_ by a producing party, such as converting ESI to PDFs. See, _Jannx Med. Sys. v. Methodist Hosps., Inc.,_ 2010 U.S. Dist. LEXIS 122574, at *11 (N.D. Ind. Nov. 17, 2010), _National Jewish Health v. WebMD Health Servs. Group, Inc.,_ 2014 WL 2118585 at *6 (D. Colo. May 21, 2014)("The

producing party, however, must do "nothing to compromise or significantly degrade the ability of [the requesting party] to fully search or sort the [producing party's] ESI Production."). Here, as in the _Echavarria_, Defendant did not comply with either method of production. The Court must compel Defendant to produce all the requested documents in the format as they were maintained in the usual course of business including all attachments.

## 2. Defendant Should Be Required to Comply with Plaintiff's Discovery Requests to the Extent it Relied on General Objection

Defendant asserted **31** boilerplate "General Objections" in RFP and Answers to Interrogatories. The word "**_specificity_**" in both FRCP 33(b)(4) and 34(b)(2)(B) precludes "General Objections". _Mulero-Abreu v. Puerto Rico Police Dept.,_ 675 F. 3d 88, 1st Cir. 2012("[B]lanket objection to all of the interrogatories -including those asking for basic information -is equally impuissant. _See_ FRCP 33(b)(3)-(4) (explaining that "[t]he grounds for objecting to an interrogatory must be stated with specificity"). Subsequently, **45** times Defendant referred to "General Objections" in its RFP and answers to interrogatories stating that a response is "subject to and without waiver of these General Objections". Simply stating a response is "subject to" General Objections does not satisfy the "**_specificity_**" requirement as it fails to identify for the propounding party which General Objection is applicable, whether documents are being withheld, or whether the response is complete. Rule 34 makes <u>no</u> provision for a response that attempts to both _object_ and _produce_, but produce only "subject to and without waiving its objections". Conditional boilerplate left Plaintiff in the dark as to as to whether the question has actually been fully answered or whether only a portion of the question has been answered or to whether something unidentified has been withheld violating the respondent's obligation under Rule 34(b)(2) to "clearly state that responsive documents do not exist, have already been produced, or exist _but_ are being withheld based on an objection".

Thus "General Objections" violate Rules 33(b)(4)'s and 34(b)(2)'s requirement to indicate if responsive material is being withheld on the basis of a specific objection.  Courts consistently held that General and boilerplate objections are ineffective for much more than wasting space and annoying judges and that lawyers should stop interjecting them. _Reyes-Santiago v. JetBlue Airways Corp.,_ 932 F. Supp. 2d 291, D.P.R., 2013("[S]uch objections should have been sanctionable. _Cf. Steed v. EverHome Mortg. Co.,_ 308 Fed. Appx. 364, 371 (11th Cir.2009) (noting "that boilerplate objections may border on a frivolous response to discovery requests")).

8

_Cornell Corrections of RI. INC. v. Central Falls Detention Facility_, Dist. Court, D. RI, 2012
("General or boilerplate objections do not comply with these Rules. Objections based on
overbreadth or burden must clearly articulate the problem that justifies the objection so that the
requester can understand whether additional responsive documents exist or not.") See also,
_Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, and What We Can
Do About Them,_ 61 Drake L. Rev. 913, 926 (2013).

Therefore, all boilerplate and General Objections should be stricken as ineffective and violative
of FRCP 33(b)(4) and 34(b)(2).

### 3.      Failure to produce documents and specify the time of production - Rule 34(b)(2)(B)

**21** times Defendant stated that "Defendant will produce and/or make available for inspection
responsive and non-privileged documents within its possession, custody, or control". However,
the Defendant's responses failed to specify when discoverable information would be produced.
The 2015 amended to the Rule requires that production be "completed no later than the time for
inspection specified in the request or another reasonable time specified in the response." The
Advisory Committee Notes add that, when production occurs incrementally, "the response
should specify the beginning and end dates of the production." The bulk of unsearchable,
unorganized and repetitive images does not provide Plaintiff with information whether any
documents were produce and/or withheld. Defendant must comply with the Rule 34(b)(2).

### 4.      Failure to provide list of withheld documents - Rule 34(b)(2)(C)

Rule 34(b)(2)(C) is amended to provide that an objection to a Rule 34 request must state whether
anything is being withheld on the basis of the objection. During months of discovery Defendant
did not mention a single withheld document. But it is apparent now that it had a good reason for
incompliance – it is confirmed that it withheld several critical documents. A specific instance of
this violations was confirmed during Plaintiff's deposition on October 30, 2019, when the
Defendant counselor admitted the existence of resignation letters of several employees, which
Defendant claimed was one of the reasons for Plaintiff's termination[3]. Another confirmed
egregious and sanctionable violation of this Rule, is withholding documents related to Plaintiff's

---

[3] "In addition, Plaintiff took actions throughout her employment that directly contributed to her termination.
Specifically, Plaintiff's management style and means of communication with her colleagues led to complaints from
numerous colleagues, as well as resignations from colleagues." _LumiraDx, Inc. Supplemental Interrogatory
Responses, Page 13,_ RESPONSE TO INTERROGATORY NO. 23:

allegation that Defendant continued looking for her replacement after she was terminated. Todd Storch, the witness deposed by Plaintiff, admitted that he is in possession of several documents confirming this fact.[4] Plaintiff in vain requested this information and documents numerous times and Defendant defiantly denied that it has been looking for Plaintiff's replacement and existence of such documents. This intentional obstruction is sanctionable.  Because of Defendant's persistent resistance to comply with the discovery and because of these two confirmed instances of obstruction when Defendant was caught lying about existence of critical to this litigation documents, Plaintiff suspects that Defendant is withholding more documents.

**5.**    **Withholding Privileged documents in Violation of FCRP 34(b)**

During the discovery Plaintiff requested information and documents related to Defendant's investigation of her whistleblowing and harassment complaints as well as "numerous" complaints against Plaintiff. Defendant asserted that between August and November of 2017 it conducted required by the Company's policies workplace investigation into multiple employee's complaints and found no evidence of any discrimination at the same time concluding that Plaintiff's behavior contributed to Defendant's decision to terminate her[5]. At the conclusion of this investigation, but one month before Plaintiff was terminated on January 4, 2018, Dorian LeBlanc, Head of HR, presumably under direction of the UK in-house counsel created an "HR Report" which Defendant claims to be "work-product privileged".

It is Plaintiff position that not only this and other documents are not privileged, but even if they were privileged, Defendant waived any privilege for the reasons stated below.

It is well established that "[t]he party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that the privilege has not been waived." *XYZ Corp. v. United States (In re Keeper of Records),* 348 F.3d 16, 22 (1st Cir. 2003).

---

[4] "Q:    Do you have a copy of your advertisement or description of the position you advertised?
   A:    I have a job description, yes." ,  *Deposition of Todd Storch*

[5] "[A]t the direction of counsel, Dorian LeBlanc conducted an investigation into Plaintiff's complaint, as well as the complaints of numerous other employees against Plaintiff… [T]he investigation concluded that Plaintiff demonstrated a lack of awareness and a lack of ability to be fair and impartial in her role managing the development process. In addition, the investigation determined that there was no evidence of unlawful harassment, hostile behavior or discrimination against Plaintiff' DEFENDANT LUMIRADX, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (SUPPLEMENT).
…"[T]he evidence produced by Defendant unequivocally indicates that Plaintiff's own performance failures contributed to her termination." DEFENDANT LUMIRADX, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (SUPPLEMENT)

See also[6]. Here, by making blanket assertion of "work product privilege" Defendant failed its burden to show "that the documents were prepared in anticipation of litigation, and would not "have been created in essentially similar form irrespective of the litigation.'" *Walker v. NH Administrative Office of the Courts*, D.N.H. 2013, citing *Textron*, 577 F.3d at 30. Similarly, '[p]lacing a label of "attorney-client privilege" on a privilege log, without more, does not meet that burden. See Fed. R. Civ. P. 26(b)(5)(A)(ii) (proponent of privilege must "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the claim"). In the present case, as in *Walker*, "Defendants' blanket assertion of attorney-client privilege does not suffice to demonstrate that these emails constitute communications made for the purpose of seeking or transmitting legal advice."

### 5.1. Defendant waived all privileges by asserting boilerplate privileges without providing grounds for privileges

**28** times Defendant asserted boilerplate attorney-client and work-product privileges without any indication "whether any responsive materials [were] withheld" due to those objections. Nor did Defendant supply an adequate Privilege Log. As mandated by FRCP 26(b)(5)(A), a party that withholds otherwise responsive documents under a claim of privilege  must expressly assert the privilege claimed and produce a privilege log that "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed" and provides enough information for other parties to assess the claim.

In instant case, more than two months pass the Production's deadline, Defendant finally provided a so called "Privilege log" (Attachment E). The Excel file contained only ten (including duplicative) uncorrelated to the Plaintiff's Requests items. None of the items provided an intelligent description of the privilege to allow Plaintiff and the Court to assess whether privilege claims were well founded. "[T]he description should be sufficient "to permit the adversary to make an intelligent assessment as to the applicability of a privilege." *SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004).

---

[6] *FDIC v. Ogden Corp.,* 202 F.3d 454, 460 (1st Cir. 2000) ("In a discovery dispute, the burden to establish an applicable privilege rests with the party resisting discovery"), *Columbia Data Products v. Autonomy Corp. Ltd.,* C.A. No. 11-12077-NMG, 2012 (D. Mass. 2012) ("The party invoking a recognized privilege has the burden of establishing, not only the existence of that privilege, but also that the established privilege was not waived." *Cavallaro v. United States,* 153 F.Supp.2d 52, 56 (D. Mass. 2001), aff'd 284 F.3d 236 (1st Cir. 2002). Similarly, "[t]he party seeking work product protection has the burden of establishing its applicability." *In re Grand Jury Subpoena,* 220 F.R.D. 130, 141 (D. Mass. 2004).

"[T]he failure to produce a log of sufficient detail [also] constitutes a waiver of the underlying privilege or work product claim," *Stamps v. Town of Framingham,* 38 F. Supp. 3d 134 - D.Mass. 2014 (citing *Charles A. Wright & Arthur R. Miller*, 8 Fed. Prac. & Proc. Civ. § 2464 (3d ed). "The operative language [of Rule 45(d)(2)] is mandatory... A party that fails to submit a privilege log is deemed to waive the underlying privilege claim." *In re Grand Jury Subpoena*, 274 F. 3d 563, 1st Cir. 2001, citing *Dorf & Stanton Communications, Inc. v. Molson Breweries,* 100 F.3d 919, 923 (Fed.Cir.1996) (finding that Plaintiff waived its claim to privilege when it "fail[ed] to provide a complete privilege log demonstrating sufficient grounds for taking the privilege)."

**5.2. *Defendant waived all privileges when it put investigative report "AT ISSUE"***

It is well established that "[a] party can either expressly or impliedly waive the attorney-client privilege." *Bratt v. JENSEN, BAIRD, GARDNER & HENRY, PA*, D. Me. 2019. Under the "at issue" waiver doctrine, the attorney-client privilege is waived where a litigant affirmatively places the subject of its own privileged material at issue in litigation so that the opposing party must access that privileged material to defend the claim asserted against it.  As the First Circuit noted in *XYZ Corp. v. United States (In re Keeper of Records)*, 348 F.3d 16 (1st Cir. 2003),  the logic behind the doctrine is most apparent in cases involving an "advice of counsel" defense where a client asserts reliance on his or her attorney's advice as a defense to another's claim. According to the First Circuit, "when such a defense is raised, the pleader puts the nature of its lawyer's advice squarely in issue, and, thus communications embodying the subject matter of the advice typically lose protection." *Id.* at 23. Massachusetts courts have held that privilege waiver occurs when the privilege holder affirmatively interjects the substance of otherwise privileged information into a claim, counterclaim or defenses and an opposing party needs access to that information to respond properly. See e.g. *Darius v. City of Boston*, 433 Mass. 274, 277 (Mass. 2001) in which the court accepted "as a general principle, that a litigant may implicitly waive the attorney-client privilege, at least partly, by injecting certain claims or defenses into a case."

In instant case, not only Defendant affirmatively relied on the HR investigative report to exculpate Tom Quinlan's harassing behavior, but it also relied on the same report's conclusions against Plaintiff as to the reasons for her termination. Similarly, "The conclusions of the ACR, exonerating Leslie Fay's senior management, tend to implicate BDO in the alleged fraudulent scheme by supporting plaintiffs' claim that BDO was grossly negligent in failing to discover the accounting irregularities…More importantly, however, the Company's efforts to use the report's

conclusions affirmatively against BDO requires that they provide the underlying documents to BDO." *In re the Leslie Fay Companies, Inc. Securities Litigation,* 161 F.R.D. 274 (1995), citing *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235 (2d Cir.1993), ("[the]' selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage.") Fairness consideration comes in play when Defendant's asserted privilege makes factual allegations, the truthfulness of which may be only assessed by examining of the privileged documents. Not allowing Plaintiff to examine the result of the investigation would unjustifiably prejudice Plaintiff.

### 5.3.   *Defendant waived the privilege by relying on the reasonableness of their investigatory policies and procedures as a defense*

Defendant here waived by implication any privilege as to investigative report, insofar as it have asserted that the investigation was "complete, fair and impartial"[7]. "[I]t unfair and illogical to allow an employer to assert the reasonableness of an investigation as an affirmative defense, and, at the same time, withhold relevant evidence under the guise of privilege or work product protection." *Walker v. N.H. Admin. Office of the Courts,* Civ. No. 11-cv-421-PB, 2013 WL 672584, at *6 (D.N.H. Feb. 22, 2013)."  "The courts have identified a common denominator in waiver by implication: in each case, the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information' would have been unfair to the opposing party." *In re Keeper of Records,* 348 F.3d at 24 (quoting J.B. Weinstein & M.A. Berger, Weinstein's Federal Evidence § 503.41[1] (J.M. McLaughlin ed. 1997)). "Plaintiffs have a substantial need to see the record as it was developed to be able to test whether the grounds given by Defendants as the basis for their actions were in fact actually reported to them; whether Defendants deliberately developed an incomplete record or did a thorough investigation; and whether the conclusions of the investigation are substantiated by an accurate record... [A]ssuming arguendo that the withheld communications were privileged, Defendants would have

---

[7] *Deposition under Rule 30(b)(6) of Dorian LeBlanc*
Q.      So did you determine that Tom Quinlan was never engaged into harassing behavior?
A.      Yes.
Q.      Do you contend that your investigation, do you contend that your investigation was complete, fair and impartial?
A.      Yes.
Q.      Did you derive to this conclusion based on your fair investigation?
A.      Yes.

waived the privilege by relying on the reasonableness of their investigatory policies and procedures as a defense. Defendants would need to choose whether to assert the affirmative defense or the privilege, but could not preserve both by selectively omitting certain communications." _Koumoulis v. Indep. Fin. Mktg. Grp., Inc_., 295 F.R.D. 28, 40, 42, 47-48 (E.D.N.Y. 2013).

Here, Defendant has waived any privilege by consistently maintaining fairness of its investigation. "Implying a subject matter waiver in such a case ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield. Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process." _In Re Keeper of Records,_ 348 F.3d 16, 22 (1st Cir. 2003).

### 5.4. _Documents created in the Ordinary Course of Business are not privileged_

At the Rule 30(b)(6) deposition Defendant testified that it conducted the workplace investigation of Plaintiff's and other employees' complaints pursuant of to the Company's policies during the ordinary course of business[8]. The Advisory Committee's Notes to FRCP 26 (b)(3) limit the scope of the attorney work product privilege to documents created in the ordinary course of business. Specifically, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity" provided by the attorney work product privilege.  "In this case, however, the majority of the claimed attorney-client communications relate to business advice that is not privileged, and Defendants cannot waive a privilege that never existed." _Id_.

Furthermore, Defendant asserted that "Dorian LeBlanc, at the direction of counsel, undertook an investigation in 2017. Without waiving the attorney-client privilege, Defendant states that the investigation **concluded that Plaintiff demonstrated a lack of awareness and a lack of ability to be fair and impartial in her role managing the development process.** In addition, the investigation determined that there was no evidence of unlawful harassment, hostile behavior or discrimination against Plaintiff." (_Response to Interrogatory No.16_). On November 25, 2019, during the Rule 30(b)(6) deposition, Defendant's designee, LeBlanc, acknowledged

---

[8] _Deposition under Rule 30(b)(6) of Dorian LeBlanc_
Q. Is conducting such investigation part of Lumira, would it be conducting such investigation as part of LumiraDx business practices?
A.  If we believe that the circumstances warrant a formal investigation, yes.

that his conclusion **"that Plaintiff demonstrated a lack of awareness and a lack of ability to be fair and impartial in her role managing the development process"** was based on his "normal role of providing HR support to the organization"(Deposition XXX).

As the _Columbia Data_[9] court affirmatively stated that litigants may not use protected information as "'both a sword and a shield.".. Likewise, the _Clair_[10] court emphasized that a party "cannot have it both ways." Put another way, the courts will not tolerate, as a matter of fairness, a party relying on privileged material in support of a claim while simultaneously denying the opposing party access to that information because it is protected from disclosure.

### 5.5. _Objection to "Privilege" that is not raised during the Deposition is waived_

Furthermore, during the deposition, Defendant failed to properly raise objection due to privilege. Per Rule 30(c)(2), any objection must be "stated concisely in a nonargumentative and nonsuggestive manner." The record clearly shows that Defendant's counsel failed to raise any objections based to privilege and consequently waived it. Therefore, Defendant waived any privilege pertaining to the "HR reports". "Requiring lawyer to state the basis for their objections is not the same thing as requiring 'speaking objections' in which lawyers amplify or argue the basis for their objections." _Security National Bank of Sioux City, Iowa v. Abbott Laboratories,_ 229 (N.D. Ia. 595 2014). Under Rule 30(d)(1) "(c)ounsel's statements when making objections should be succinct and verbally economical, stating the basis of the objection and nothing more. _McDonough v. Keniston, et al_. CV-96-586-B, 1998, citing _Damaj v. Farmers Ins. Co.,_ 164 F.R.D. 559, 561 (N.D. Okla. 1995).

Objections based on privilege must be stated concisely, and if no privilege is asserted, or the wrong privilege is asserted, the privilege is waived, _e.g., Moloney v. United States,_ 204 F.R.D. 16, 20-21 (D. Mass. 2001). Under the Federal Rules of Civil Procedure, [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the

---

[9] _Columbia Data Products v. Autonomy Corp. Ltd._, C.A. No. 11-12077-NMG, 2012 U.S. Dist. LEXIS 175920 (D. Mass. Dec. 12, 2012)
[10] _Clair v. Clair,_ No. SJC-11256, 2013 Mass. LEXIS 10 (Mass. Jan. 25, 2013)

claim. Rule 26(b)(5)(A). Deponent's blanket refusal to answer deposition's questions without objection is sanctionable under Rule 30(d)(2).

In sum, each of the reasons stated above should be sufficient to find that Defendant did not sustain its burden of proof that any privilege applies to the documents it withheld. Therefore, Defendant must produce all "privileged" documents and specifically "HR Report" generated by the Head of HR during his regular business practice, Dorian LeBlanc, to allow Plaintiff properly and fairly develop her claims.

## 6.    **Invalidity of Specific Objections**

Boilerplate or unsupported objections—even when asserted in response to a specific discovery request and not as part of a general list of generic objections preceding any responses to specific discovery requests—are likewise improper and ineffective.

(a)    **31** times Defendant asserted that requests are "overly broad" and **59** times that they are "unduly burdensome". Absent more, these objections are useless.  "[A] party resisting discovery has the burden of showing some sufficient reason why discovery should not be allowed." _Bratt v. JENSEN, BAIRD, GARDNER & HENRY, PA_, D. Me. 2019, _Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.,_ 730 F. Supp. 1165, 1186, D. Mass. 1989. _See also, Fischer,_ 2017 WL 773694, at *3 ("[S]tating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate.  Why is it burdensome?  How is it overly broad?  This language tells the Court nothing."); _McLeod_, 894 F.2d at 1484-86 (holding that simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive," is inadequate to "voice a successful objection", citing _Josephs v. Harris Corp.,_ 677 F.2d 985, 991-92 (3d Cir. 1982)). Failing to do so makes such an unsupported objection nothing more than unsustainable meritless ineffective boilerplate.

(b)    **63** times Defendant asserted objection as to relevancy of the requests "to Plaintiff's claims under the ADEA". Courts consistently held that "[t]he party resisting discovery has the burden of showing "specifically how each interrogatory _**is not relevant**_ or how each question is overly broad, burdensome or oppressive.'" _EEOC v. Baystate Medical Center, INC.,_ D. Mass. 2017. See also, _Curtis v. Metropolitan Life Insuranc_e, No. 3:15-cv-2328-B, citing _McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,_ 894 F.2d 1482, 1485 (5th Cir. 1990). "The court in _Josephs_ held that the "party resisting discovery `must show specifically how . . . each interrogatory is not

relevant or how each question is overly broad, burdensome or oppressive.'" *Id.* at 992 (quoting *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D.Pa. 1980)), S*ee also*[11]. Defendant here asserted this blanket objection to vast majority of discovery requests and, consequently, withheld relevant and responsive information by making unspoken and self-serving conclusory determinations of which requests were "not relevant to Plaintiff's claims under the ADEA".

(c)   Furthermore, Defendant waived its objection to relevancy of the Plaintiff's interrogatories, Requests for Production and Admissions as to Defendant's Affirmative Defenses. Pursuant to FCRP 33(b)(5) "Any ground not stated in a timely objection is waived". All of the Plaintiff's Requests are relevant to ***Defendant's affirmative defenses*** (Attachment A, pp. 11-17). Defendant effectively waived any objection as to relevancy Plaintiff's requests to Affirmative Defenses. Defendant must produce all requested documents as they are relevant to its affirmative defenses.

(c)   In addition to General Objections, three times Defendant invoked "not reasonably calculated to lead to the discovery of admissible evidence". <u>This is no longer a valid objection.</u>  *See Fischer*, 2017 WL 773694, at *3 ("The 2015 amendments deleted that language from Rule 26(b)(1), and lawyers need to remove it from their jargon.");

(d)   **5** times Defendant raised objection as premature. The court in *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 2017 WL 976626 (N.D. Iowa Mar. 13, 2017) noted that an objection that a discovery request is premature is baseless as the discovery was propounded after the time specified in FRCP 26 and there is no limitation on the sequence of discovery. Such objection is rendered meritless and ineffective and should be stricken.

(e)   **3** times Defendant objected to interrogatories to the extent<u> that they call for legal conclusions.</u>

---

[11] *Autoridad de Carretera y Transportacion v. TransCORE Atlantic, INC.,* D.P.R., 2016 "When a party resists the production of evidence, it "bears the burden of establishing lack of relevancy or undue burden." *Sánchez-Medina v. UNICCO Service, Co*., 265 F.R.D. 24, 27 (D.P.R. 2009) (Arenas, J.) (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp*., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)). The objecting party "must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive." Id. (quotation marks omitted). See also Fed. R. Civ. P. 33(b)(4) (providing that "the grounds for objecting to an interrogatory must be stated with specificity.") (emphasis provided); Fed. R. Civ. P. 34(b)(2)(B) (providing that objections to a request for document production must "state with specificity the grounds" for the objection, "including the reasons.") (emphasis provided). Thus, generalized objections to an opponent's discovery requests are insufficient. See, e.g., *Mancia v. Mayflower Textile Servs. Co*., 253 F.R.D. 354, 358 (D. Md. 2008) ("Boilerplate objections that a request for discovery is overbroad and unduly burdensome . . . are improper unless based on particularized facts.") (citations and quotation marks omitted); *Walker v. Lakewood Condo Owners Ass.*n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")

FRCP 33(a)(2) provides that an interrogatory is not objectionable simply because it "asks for an opinion or contention that relates to … the application of law to fact….". Defendant's objection is meritless and ineffective should be stricken.

(f)     Defendant asserted that it reserve the "right" to supplement responses. Parties are **_required_** to supplement their responses under FRCP 26(e)(1).  *See Heller*, 303 F.R.D. at 484. This "objection" is pointless.

(g)     **15** times Defendant used "confidentiality" objection. Defendant cannot declare that documents contain **"confidential and personal protective information"** to avoid discovery. "Confidential" does not mean privileged**.** To the extent that Defendant intended to supplement its responses after obtaining the Protective Order, Defendant failed to do so. All Defendant did is marked already produced already incompliant documents as "confidential" and reproduced them again. This objection is ineffective. Defendant must produce so called "confidential" documents.

(h)     **17** times Defendant objected to requests as they were "vague". If a party believes that the request is vague, that party shall attempt to obtain clarification prior to objecting on this ground. _Consumer Elecs. Ass'n v. Compras & Buys Magazine, Inc._, 08-21085-CIV, 2008 WL 4327253, at *2 (S.D. Fla. 2008). In instant case, in its letter to Defendant, Plaintiff clarified Defendant's specific objections as to vagueness. However, Defendant failed to amend responses based on Plaintiff's clarifications.

(i)      Virtually every of Defendant's response were referencing other sources such as pleadings, production and previous responses. "Answering interrogatories simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33." _Mulero-Abreu v. Puerto Rico Police Dept_., 675 F. 3d 88, 1st Cir. 2012, citing See _Union Pac. R.R. v. Larkin_, 229 F.R.D. 240, 243 (D.N.M.2005); _Int'l Mining Co. v. Allen & Co.,_ 567 F.Supp. 777, 787 (S.D.N.Y.1983). See also, _Budget Rent-A-Car of Mo., Inc. v. Hertz Corp.,_ 55 F.R.D. 354, 356 (W.D. Mo. 1972)( "The answer to an interrogatory must be responsive to the question; it should be complete in itself and should not refer to other documents."), _Autoridad de Carretera y Transportacion v. TransCORE Atlantic, INC_., D.P.R. 2016 ("[A] incorporation by reference of the allegations of a pleading is not a responsive and sufficient answer to an interrogatory.")

In instant case, Defendant's references to incompliant Production also violates Rule 34: "The same flaws mar the plaintiffs' invitation that the defendants sift through documents previously delivered in search of the documents that they requested under Rule 34", _Mulero-Abreu v. Puerto_

*Rico Police Dept.,* 675 F. 3d 88, 1st Cir. 2012.

## SPECIFIC DEFICIENCIES

Specific deficiencies of Defendant's Answers to Plaintiff's Interrogatories are described in EXHIBIT B.

Specific deficiencies of Defendant's Responses to Plaintiff's Requests for Production are described in EXHIBIT C.

Specific deficiencies of Defendant's deposition are described in EXHIBIT A.

## SANCTIONS

Plaintiff was severely prejudiced by Defendant's stonewalling the discovery process.

*Velez v. Marriott PR Management, Inc.*, 590 F. Supp. 2d 235, 258 (D.P.R. 2008) ("Prejudice will be measured by the degree in which a party's ability to adequately develop its liability theory or mount a proper defense has been hampered. *Perez-Velasco*, 266 F.Supp.2d at 269; *Driggin v. Am. Sec. Alarm Co.*, 141 F.Supp.2d 113, 121 (D.Me. 2000); *Vazquez-Corales,* 172 F.R.D., 14").

Plaintiff is asking this Court to sanction Defendant and its counsels for multiple violations of Discovery Process. Specifically violations of Rules 26(g) and 30(d)(2).

As described in EXHIBIT A, "If a party fails to comply with Rule 30(b)(6) or fails to cooperate in discovery generally, the Federal Rules of Civil Procedure allow the court to impose sanctions. *Id.;* Fed. R.Civ.P. 37. Federal Rule of Civil Procedure 30(d)(2) authorizes a court sanction any "person who impedes, delays, or frustrates the fair examination of the deponent." *Baker, 670 F.3d at 123* (citing Fed.R.Civ.P. 30(d)(2)).

"The applicable standard to impose sanctions is whether a person "impedes, delays, or frustrates the fair examination of the deponent."[13] Fed.R.Civ.P. 30(d)(2)." *Barth v. City of Peabody*, D. Mass, 2019.

Furthermore, sanctions under Rule 26(g) are imposed when a paper signed and filed has been interposed for an improper purpose or where a competent attorney could not have reasonably believed that the paper was well grounded in fact and warranted by existing law. See Fed. R. Civ. P. 26(g) Advisory Committee Notes to 1983 Amendment (Rule "provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each

attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection"). "There are only three appropriate responses to a request for production of documents: (1) an objection to the scope, time, method and manner of the requested production; (2) an answer agreeing to the requested scope, time, place and manner of the production; or (3) or a response offering a good faith, reasonable alternative production which is definite in scope, time, place or manner. Plaintiff did none of the three. Rather, with its meaningless and arguably misleading response, plaintiff simply tried to buy time and technically comply with Rule 34. One of plaintiff's counsel essentially admitted as much." *Branhaven LLC v. Beeftek, Inc.,   F.R.D.  , 2013 WL 388429 (D. Md. Jan. 4, 2013)*. **Rule 26(g)(3)** *requires* the imposition of sanctions when 26(g) is violated.

WHEREFORE, Plaintiff is asking this Court to Compel Defendant to comply with discovery requests and to sanction Defendant for egregious incompliance with the discovery process.

Dated: January 7, 2020

Respectfully submitted,
Rimma Vaks
/s/ Rimma Vaks*, Pro Se,*
103 Puritan Lane,
Swampscott, MA 01907
Rimma.Vaks@verizon.net
781-581-6994

### Certificate of Conference

In compliance with Rule 37(a)(1) and Local Rule 7.1, Plaintiff certifies that on January 2, 2020, she has conferred in good faith with Defendant's counsels Gauri P. Punjabi and Jennifer R. Budoff regarding the nature of this Motion concerning Interrogatories and Production Request and its legal basis, after attempting in prior conversations to resolve Defendant's objections, but did not obtain concurrence in the relief sought.

Dated: January 7, 2020

Rimma Vaks
/s/ Rimma Vaks*, Pro Se,*
103 Puritan Lane,
Swampscott, MA 01907
Rimma.Vaks@verizon.net
781-581-6994

20

## CERTIFICATE OF SERVICE

I hereby certify that on this day, January 7, 2020, I electronically filed this Document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Gauri P. Punjabi, Jennifer Budoff
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
GPPunjabi@mintz.com
JRBudoff@mintz.com
Attorney for Defendant

21