UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RIMMA VAKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 18-12571-LTS |
| ) | |
| LUMIRADX, INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER ON DEFENDANT
LUMIRADX, INC.'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 83)

December 11, 2020

SOROKIN, J.

This employment discrimination case follows the January 4, 2018 termination of Plaintiff

Rimma Vaks from her employment at Defendant LumiraDx, Inc. Before the Court is

LumiraDx's Motion for Summary Judgment. Doc. No. 83.[1] The parties' motions to strike are

resolved in a separate order also issuing today. Doc. No. 125. For the reasons which follow,

LumiraDx's Motion for Summary Judgment (Doc. No. 83) is ALLOWED.

I.     FACTUAL AND PROCEDURAL BACKGROUND

    A.     Factual Background

    There are certain facts which are undisputed. In November of 2016, Vaks, then either

sixty-one or sixty-two years old, was hired into a senior position at LumiraDx. Doc. No. 42 ¶ 6;

Doc. No. 102 ¶¶ 11–11a. In early 2017, Vaks was assigned greater supervisory responsibilities

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the pages numbers in the ECF header.

and began managing some number of departments. *Id.* ¶¶ 15–15a; *see also* 86-2 (organizational chart). In May of 2017, Vaks lodged various allegations against LumiraDx Co-Founder Summit Nagpal claiming, among other things, that he was mismanaging product development and deceiving customers and investors. Doc. No. 102 ¶¶ 20–21. An internal investigation followed and Nagpal ultimately resigned his position at LumiraDx. *Id.* ¶¶ 22, 25–25a.

Nagpal was replaced as manager of the Health IT group by Tom Quinlan, to whom Vaks began reporting. *Id.* ¶¶ 23–23a, 26. Quinlan came in with a mandate for change. By LumiraDx's estimation, the Health IT group was costing the company approximately $10,000,000 each year. Doc. No. 85-2 at 26. Soon after Quinlan took over, the company determined it could save more than $2,000,000 over the coming year by downsizings the Health IT group. *Id.* ¶ 87, 87a; *see also* Doc. No. 87-6 (contemporaneous internal LumiraDx document explaining the basis for downsizing). The company choose to implement layoffs and began winding down several underperforming products, including the "Consult" project on which Vaks worked. Doc. No. 102 ¶¶ 98, 98a.[2] Between fifteen and twenty employees were terminated from the Health IT group in the second half of 2017. Doc. No. 85-2 at 29.

While this was happening, Quinlan began to run into trouble with Vaks. In July of 2017, Quinlan was forced to remove some of Vaks's management responsibilities following a confrontation between her and one of her subordinates. Doc. No. 102 ¶ 27a; *see also* Doc. No. 42 ¶ 33–34; Doc. No. 86-8. A number of Vaks's coworkers also filed complaints about Vaks, describing her as difficult to work with. Doc. No. 101-2 at 8–9 (listing complaints received); *see also* Doc. No. 86-5 (written complaint regarding Vaks); Doc. No. 86-6 (same); Doc. No. 86-7 (same); Doc. No. 86-8 (same). Vaks responded with her own complaint, accusing her colleagues

---

[2] The parties dispute whether Vaks also worked on other projects. *See id.*

of retaliating against her for blowing the whistle on Nagpal's misconduct. Doc. No. 86-3. LumiraDx investigated these complaints but took no further action. Doc. No. 102 ¶¶ 79–80.

On October 30, 2017, Quinlan held a disciplinary meeting with Vaks regarding her behavior towards another manager in the Health IT group, Neil Armstrong. *Id.* ¶¶ 54–55a; *see also* Doc. No. 105-1 at 2. Vaks and Armstrong had a contentious relationship. Doc. No. 102 ¶¶ 38–40, 46. The October 30th meeting was held to reprimand Vaks for emailing a number of senior employees at LumiraDx to accuse Armstrong of jeopardizing a product release. *Id.* ¶¶ 54–55a; Doc. No. 105-1 at 2. Quinlan explained that Armstrong had done nothing wrong and that Vaks's email had been the final straw for Armstrong, who had stepped down from his role as a manager to avoid further interactions with her. Doc. No. 105-1 at 2. Quinlan threatened Vaks with termination and wrote her up, noting in his report that she "continues to show an inability to work effectively with teams other than her own." *Id.*; *see also* Doc. No. 101-1 at 31–32; Doc. No. 102 ¶ 64a.

The next day, Vaks requested a meeting with LumiraDx Chief Financial Officer Dorian LeBlanc. Doc. No. 102 ¶¶ 57–57a. During that meeting, Vaks complained that Quinlan had harassed her and insulted her and was creating a hostile work environment. *Id.* ¶¶ 58–61a. At no point in this meeting (or at any other time while working at LumiraDx) did Vaks suggest that she was being discriminated against because of her age. *Id.* ¶¶ 86–86a. LeBlanc has testified that, in his view, Vaks provided "numerous examples of disagreeing with decisions made by [Quinlan], and of debates . . . and arguments . . . between [the two]" but that she did not describe anything constituting harassment. Doc. No. 101-1 at 33.

Vaks was notified of her termination on January 4, 2018. Doc. No. 102 ¶ 92–92a. Two other younger employees were also terminated on or about that same date. *Id.* ¶¶ 95–96a. In

return for a severance package, Vaks executed an agreement waiving any and all claims against LumiraDx, including claims arising from her whistleblowing activity. Doc. No. 9-1 at 4–6. After careful review, the Court determined this agreement validly waived all claims other than those brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq*.[3] The remaining facts relevant to Vaks's age discrimination claims are set forth below.

    B.    <u>Procedural Background</u>

Vaks filed suit pro se in Massachusetts Superior Court, naming LumiraDx and two of its managers as defendants. Doc. No. 1-2. Her First Amended Complaint raised claims of gender, national origin, and age discrimination in violation of federal law, as well as associated federal and state law claims. *Id.* The defendants removed, Doc. No. 1, and moved to dismiss, Doc. No. 8. The Court granted the defendants' motion in part, holding that Vaks's severance agreement barred all of her claims except those brought against LumiraDx pursuant to the ADEA. Doc. No. 25.

The course of this case has not been smooth. Vaks engaged in a pattern of misconduct as the case proceeded through discovery. She filed late discovery requests which the Court found were largely overbroad, unreasonable, and not proportional to the case. Doc. No. 60. She induced the Court to issue an order by representing that LumiraDx had assented to her motion when, in fact, LumiraDx had not. Doc. No. 53. She violated a protective order by filing certain confidential documents on the public docket. Doc. No. 80 at 2. And she has repeatedly circumvented local rules limiting the length of a party's filings, imposing unwarranted burdens

---

[3] The severance agreement executed by Vaks purported to waive *all* claims, including age discrimination claims. *See* Doc. No. 9-1 at 4–6. However, the ADEA has provisions which can, in certain situations, preserve an older worker's ADEA claims notwithstanding an otherwise valid release. *See* 29 U.S.C. § 626(f)(1); *see also* Doc. No. 25 (order dismissing all claims except those brought pursuant to the ADEA).

both on LumiraDx and on the Court. *See id.* at 2–3.[4] Most troublingly, she leveled serious accusations of misconduct against LumiraDx's outside counsel, accusations which the Court carefully reviewed and concluded were baseless. *Id.* at 1.[5]

The Court imposed limited sanctions on Vaks. Specifically, Vaks was ordered to seek the Court's approval before filing any future motions. *Id.* at 3. In crafting the Sanctions Order, the Court recognized that Vaks is a pro se litigant and entitled to a certain degree of leeway, but also noted that she is an educated person and that her misconduct was prejudicing LumiraDx. *Id.* Vaks then moved to disqualify the undersigned, which the Court denied. Doc. No. 82. The Court noted that Vaks's Motion to Disqualify was filed without prior approval, in violation of the Sanctions Order, but concluded no further sanction was warranted in light of the circumstances. *Id.* Thereafter, Vaks filed another motion without prior approval, also in violation of the Court's Sanctions Order. Doc. No. 92. That motion is resolved in a separate order issuing today. Doc. No. 125.

LumiraDx has moved for summary judgment on Vaks's remaining claims. Doc. No. 83. Before the Court are LumiraDx's Memorandum in Support of Summary Judgment, Doc. No. 84,

---

[4] The presently pending motions are a good example of Vaks's tactics. Her briefs use nonstandard font size above- and below-the-line and one-and-a-half line spacing (the latter of which is a violation of Local Rule 5.1(a)(2)). Vaks has also advanced substantive arguments in the parties' Joint Statement of Undisputed Fact, which she invokes in single-line arguments in her brief—the Court counts fourteen separate arguments made using this approach in one three-page stretch of her Third Opposition. *See* Doc. No. 101-1 at 17–20. Vaks has previously been warned against similar misconduct. *See* Doc. No. 75; Doc. No. 80 at 2–3.

[5] Throughout this case, Vaks has repeatedly accused LumiraDx, its counsel, and various LumiraDx employees of committing perjury or lying. Indeed, she raises at least eight separate allegations of perjury in the Joint Statement of Undisputed Facts alone. *See* Doc. No. 102 ¶¶ 22a, 29a, 54a, 56a, 93a, 97a, 99a, 106a. Similar accusations permeate her summary judgment briefs and form the foundation of her Motion to Strike. Docs. No. 92, 101, 117. None of Vaks's accusations have merit. Despite her obvious intelligence, Vaks does not seem to grasp that reasonable people can disagree over the meaning of facts and caselaw without one party to the dispute having committed perjury.

Vaks's Third Memorandum in Opposition to Summary Judgment, Doc. No. 101,[6] LumiraDx's

Reply to Vaks's Opposition, Doc. No. 111, and Vaks's Sur-Reply, Doc. No. 117. The Court

heard oral argument on LumiraDx's Motion for Summary Judgment on December 1, 2020.

II.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden

shifts to the nonmoving party, who "may not rest on mere allegations or denials of [her]

pleading, but must set forth specific facts showing there is a genuine issue for trial." *Barbour v.

Dynamics Rsch. Corp.*, 63 F.3d 32, 37 (1st Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 256 (1986)). Further, a court may enter summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).

The Court is "obliged to review the record in the light most favorable to the nonmoving

party, and to draw all reasonable inferences in the nonmoving party's favor." *LeBlanc v. Great

Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory

allegations, improbable inferences, and unsupported speculation." *Prescott v. Higgins*, 538 F.3d

32, 39 (1st Cir. 2008) (quoting *Medina–Muñoz v. R.I. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st

Cir. 1990)).

---

[6] Vaks filed her First Opposition on May 1, 2020. Doc. No. 91. Four days later, Vaks filed her Second
Opposition. Doc. No. 93. The citations to the record in Vaks's Second Opposition did not line up with
forty-six exhibits she filed in support. *See* Doc. No. 96. The Court therefore ordered Vaks to refile her
Opposition "in a corrected form that as far as reasonably possible and in good-faith and without making
any substantive changes or additions, remedies the issues with her exhibits and citations." Doc. No. 99.
Vaks then filed her Third Opposition. Doc. No. 101.

III.     DISCUSSION

Vaks's remaining claims are brought pursuant to the ADEA, which makes it "unlawful for an employer to 'discharge . . . or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Collazo v. Nicholson*, 535 F.3d 41, 44 (1st Cir. 2008) (alteration in original) (quoting 29 U.S.C. § 623(a)(1)). The ADEA also prohibits employers from retaliating against an employee for raising allegations of age discrimination. *See* 29 U.S.C. § 623(d).

Vaks alleges that LumiraDx violated the ADEA by (A) terminating her employment, (B) failing to promote her (C) allowing the creation of a hostile workplace, and (D) retaliating against her for protected activity. LumiraDx argues summary judgment is appropriate because there is no evidence that age played a role in how Vaks was treated by the company. The Court takes each claim in turn.

A.      ADEA Termination Claim

The ADEA makes it unlawful for an employer to terminate an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). The plaintiff in an ADEA discrimination suit bears the "burden of proving that [her] years were the determinative factor in [her] discharge, that is, that [she] would not have been fired but for [her] age." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991) (citation omitted). Where, as here, the plaintiff can provide no direct evidence of discrimination, courts employ the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 446–47 & n.2 (1st Cir. 2009).

1. *The* McDonnell Douglas *Framework*

The first stage of the *McDonnell Douglas* framework requires a plaintiff to establish a prima facie case of employment discrimination. *Id.* at 447. A plaintiff must demonstrate that (1) she was at least forty years old when she was terminated, (2) her job performance was sufficient to meet her employer's legitimate expectations, (3) the employer took adverse action against her, and (4) the employer demonstrated a continuing need for the services she had been rendering. *See Adamson v. Walgreens Co.*, 750 F.3d 73, 78 (1st Cir. 2014). When an employee is terminated as part of a group layoff, a plaintiff can satisfy the fourth prong by a showing that "younger persons were retained in the same position or that the employer otherwise did not treat age neutrally." *Mercado v. Cooperativa de Seguros de Vida*, 726 F. Supp. 2d 96, 102 (D.P.R. 2010) (citation omitted).

Once the employee makes out a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for their adverse action. *See Adamson*, 750 F.3d at 78–79. If the employer succeeds, then "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Velez*, 585 F.3d at 447 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993)). The "sole remaining issue [is] discrimination *vel non*," *Id.* (citation omitted), and the plaintiff's case must rise or fall on the strength of her evidence that age was the "but-for" cause of her termination, *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

2. *LumiraDx's Proffered Nondiscriminatory Rationales*

The Court assumes, without deciding, that Vaks has established her prima facie case. Turning to the next prong of the *McDonnell Douglas* framework, LumiraDx offers two separate explanations for Vaks's termination. The first is the "financial condition of the Health IT group

8

[at the time of her termination] and LumiraDx's strategy to downsize that group." Doc. No. 102 ¶ 97. The second is Vaks's inability to work collaboratively with her colleagues. *Id.* ¶ 99. Each of these explanations is facially legitimate and non-discriminatory.

LumiraDX has submitted evidence supporting its downsizing rationale. Specifically, it points to undisputed evidence that: (1) the Health IT group (in which Vaks worked) was costing the company millions of dollars a year, Doc. No. 85-2 at 26 (estimating the Health IT group was losing the company over $10,000,000 per year); (2) the company made a contemporaneously documented business decision to downsize the group, Doc. No. 87-6; *see also* Doc. No. 102 ¶ 87–87a; (3) this downsizing was expected to save more than $2,000,000 in the first year, Doc. No. 87-6 at 12; (4) approximately fifteen to twenty employees were terminated from the Health IT group in the Fall of 2017, Doc. No. 85 at 29; (5) two younger employees were also terminated on or about January 4, 2018, the day on which Vaks was let go, Doc. No. 102 ¶¶ 95–96a; and (6) the "Consult" product on which Vaks worked was discontinued around the time she left the company, *id.* ¶¶ 98–98a.

LumiraDx has also submitted evidence supporting its collegiality rationale. It points to undisputed evidence that: (1) Vaks's supervisory responsibilities were reduced by Quinlan, her manager, following a conflict between Vaks and a subordinate in July of 2017, *id.* ¶ 27a; *see also* Doc. No. 42 ¶ 33–34; Doc. No. 86-8; (2) Vaks was written up by Quinlan in October of 2017 for inappropriate behavior towards a colleague and verbally threatened with termination, Doc. No. 102 ¶¶ 54–55, 64–64a; Doc. No. 105-1 at 2; (3) Vaks received a negative review of her managerial ability soon before her termination, Doc. No. 102-31 (detailing problems within Vaks's department and concluding "[t]here is clearly a management problem here"); and (4) Vaks criticized Quinlan's management during a meeting on November 1, 2017 in a manner

which LeBlanc has testified he considered unprofessional, *see* Doc. No. 101-1 at 30–33. LumiraDx has also submitted numerous complaints it received from Vaks's colleagues regarding her behavior but takes the position, in further briefing and at argument, that Vaks was not fired because of these complaints. *See* Doc. No. 105 at 5.

Vaks argues that LumiraDx should be prevented from offering its second rationale under the doctrine of judicial estoppel. Doc. No. 101 at 13 (citing Doc. No. 92). As grounds, she points to various representations made by LumiraDx during a 2018 investigation by the Office of the Attorney General of Massachusetts (OAG) whether LumiraDx of violated state employment law by allegedly placing the above-mentioned complaints into Vaks's personnel file without notice. The OAG discontinued its investigation after LumiraDx represented the following:

> LumiraDx has been facing financial struggles over the past year and recently underwent a company restructuring . . . . As a result, . . . [LumiraDx] decided to eliminate several positions in the company, including [Vaks's] position. LumiraDx's decision to terminate [Vaks's] employment was not based on the employee complaints that had been brought against her.

Doc. No. 92-2 at 1; *see also* Doc. No. 92-3 (letter from the OAG discontinuing the investigation "[b]ased on" LumiraDx's representations).

Judicial estoppel is an equitable doctrine which, in certain circumstances, "prevents a party from asserting a position in one legal proceeding that is clearly contrary to the position asserted in another, earlier legal proceeding." *Howell v. Town of Leyden*, 335 F. Supp. 2d 248, 250 (D. Mass. 2004) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Although "[t]he contours of the doctrine are hazy," it is well established judicial estoppel is only appropriate where a party's earlier position and later position are "directly inconsistent, that is, mutually exclusive." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004); *accord Gens v. Resolution Trust Corp.*, 112 F.3d 569, 572 (1st Cir. 1997) (stating the positions must be "at odds" with one another).

10

LumiraDx made two relevant representations to the OAG: (1) Vaks was fired "as a result" of the company's decision to downsize; and (2) the decision to terminate Vaks "was not based on the employee complaints that had been brought against her." Doc. No. 92-2 at 1. These representations are distinct—one adopts a rationale for her termination while the other disavows an alternative rationale. Neither is "directly inconsistent" with LumiraDx's position here. *Synopsis*, 374 F.3d at 33.

As to the first, the statement that Vaks was terminated "as a result" of LumiraDx's decision to downsize is not "exclusive," *id.*, of other potential reasons for her termination. The phrase "as a result" is an idiom meaning "because of." As a Result, *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/as%20a%20result (last accessed Dec. 2, 2020). The term imports a causal relationship in which one thing occurred "because of" another. But it does not mean that no other causes contributed to that result. *See, e.g.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020) (explaining meaning of "because of" allows for "confluence of multiple factors" (in reference to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1))). Take the layoff at LumiraDx, for example. Some employees were let go and others kept their jobs. Although we would say the terminated employees lost their jobs "because of" the layoff it is clear that other factors must have been at work—lack of seniority, lack of skill, bad luck—something which distinguished them from those who kept their jobs. The same is true for Vaks. LumiraDx's representation she was let go "as a result" of downsizing does not exclude other potential reasons, such as a lack of collegiality.

As for the second representation, LumiraDx's statement that Vaks was not terminated "based on" the complaints of her colleagues does not contradict its position in this case that she was terminated because her superiors believed she lacked collegiality. Indeed, LumiraDx has

disclaimed any reliance on the complaints, resting entirely on other evidence to support this rationale. Doc. No. 105 at 5.

Judicial estoppel is inappropriate, given the lack of contradiction. Consequently, the Court need not reach the interesting question of whether the OAG's investigation amounted to a judicial proceeding. LumiraDx has satisfied its burden as to both rationales.

3. *Vaks's Evidence of Age Discrimination and Rebuttal of LumiraDx's Rationales*

At the third prong, Vaks must point to evidence in the record which could allow a rational factfinder to conclude that Vaks's age was the but-for cause of her termination. *See Gross*, 557 U.S. at 177. To prevail, Vaks "must offer some minimally sufficient evidence, direct or indirect, both of pretext *and of the employer's discriminatory animus*." *Mesnick*, 950 F.2d at 825 (emphasis added); *accord Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1341 (1st Cir. 1988) (noting the "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age"). This Vaks has not done.

Vaks has offered no direct evidence of age discrimination, a point established by the record and one which she conceded at argument. Instead, Vaks points to a number of pieces of circumstantial evidence.

Before reviewing Vaks's circumstantial evidence of age discrimination, the Court pauses to note that Vaks herself maintains she was fired for a different reason altogether: her whistleblowing activity. Parties are of course free to plead in the alternative but, in her Opposition to Summary Judgment and under oath at her deposition, Vaks has repeatedly asserted that she was let go because Nagpal and his supporters duped or misled Quinlan and LumiraDx into terminating her, in retaliation for Vaks having blown the whistle on him. *See* Doc. No. 101

at 1–2 ("In retaliation for [Vaks's] whistleblowing, Nagpal orchestrated a retaliatory campaign against [her]. The theme of his campaign was simple: his 'loyal' friends should report to Quinlan they [c]ould not work with [Vaks] and as a result Quinlan would fire her."); Doc. No. 102 ¶ 40 (admitting "[Nagpal's supporters] were able to manipulate Mr. Quinlan to retaliate against Vaks for reporting her concerns regarding Mr. Nagpal."); Doc. No. 85 ("Q: 'This is all as a result of or part of the retaliation of the whistleblower, it all goes back to that?' A: 'Yes.'"); Doc. No. 102 ¶ 50 (admitting Vaks told LeBlanc "the harassment and hostility [she] was experiencing [at LumiraDx] . . . all started due to [her] whistleblowing on Mr. Nagpal"). Of course, Vaks settled any whistleblower retaliation claims in her severance agreement. *See supra*. Recognizing this, Vaks has cobbled together various arguments to support her age discrimination claims. Each is addressed below.

First, Vaks testifies that LeBlanc referred to her as a "matriarch" during a meeting. Doc. No. 103 ¶ 37. But she has not offered any evidence explaining the context for the remark or the manner in which it was used. The word matriarch is not commonly considered a derogatory term—indeed, it usually denotes a degree of respect and authority. Matriarch, *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/matriarch (last accessed Dec. 3, 2020) (defining "Matriarch" as "a woman who rules or dominates a family, group, or state"). In any event, "the usual rule [is] that stray comments are insufficient to meet the plaintiff's burden in an ADEA case." *Thomas v. Sears, Roebuck & Co.*, 144 F.3d 31, 34 (1st Cir. 1998).

Second, Vaks argues that LumiraDx's explanation that she was terminated due to her inability to "adapt to the future business path" of the company is discriminatory because it is based on a stereotype that the old are resistant to change. Doc. No. 101 at 20. The Court assumes

that Vaks is characterizing LumiraDx's proffered rationales because, as she conceded at argument, no such statement appears in the record. This is not a fair characterization of LumiraDx's position. Neither of LumiraDx's rationales (downsizing and lack of collegiality) imply that Vaks would have had difficulty in adapting to change.

Third, Vaks invokes caselaw applicable to the Family Medical Leave Act to suggest that an inference of animus may arise when a plaintiff demonstrates sufficient "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." Doc. No. 101 at 17 (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998)). This argument fails for two reasons. First, this is not the law in federal age discrimination cases. *See Mesnick*, 950 F.2d at 825 (noting an ADEA "plaintiff must offer some minimally sufficient evidence . . . both of pretext *and of the employer's discriminatory animus*" (emphasis added)). Second, even assuming this legal theory applies, no rational fact finder could find sufficient "implausibilities, inconsistencies, incoherencies, or contradictions" in LumiraDx's explanations to establish the inference Vaks seeks.

LumiraDx's first rationale is that it downsized the Health IT group, in which Vaks worked. There is no debate: the downsizing happened. The undisputed evidence shows the Health IT group was losing LumiraDx significant amounts of money each year. Doc. No. 85-2 at 26. The company made a contemporaneously documented decision to reduce its headcount. Doc. No. 87-6. Between fifteen and twenty employees were let go in the second half of 2017. Doc. No. 85-2 at 29. Vaks was terminated alongside two other employees, both substantially younger than her. Doc. No. 102 ¶¶ 95, 96.[7] The "Consult" product on which Vaks worked was

---

[7] Vaks claims that these employees were terminated because of "performance issues." Doc. No. 102 ¶ 92a, 96a; *see also* Doc. No. 103 ¶ 38. This is unsupported by the record. She concedes elsewhere that one

discontinued around this time. Doc. No. 102 ¶¶ 98–98a. Vaks's arguments over whether the downsizing was truly necessary from a business perspective are beside the point. *See Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir. 1990) (noting court's "role is not to second-guess the business decisions of an employer"). True, there is evidence to suggest that LumiraDx considered hiring an employee with responsibilities arguably touching on Vaks's old role, but that position was never created or filled. Doc. No. 85-2 at 28.[8]

LumiraDx's second rationale is that Vaks's superiors believed she lacked collegiality. There is no evidence to suggest this rationale is pretextual. As discussed above, Quinlan reduced Vaks's management responsibilities after she was unable to work with one of her subordinates. Doc. No. 102 ¶ 27a; *see also* Doc. No. 42 ¶ 33–34; Doc. No. 86-8. Quinlan also wrote Vaks up for her unprofessional behavior towards another colleague, expressly noting that she "continue[d] to show an inability to work effectively with teams other than her own." Doc. No. 105-1 at 2. As Vaks conceded at argument, Quinlan held a disciplinary meeting with her following this last incident in which he explained why her behavior was inappropriate and repeatedly threatened to fire her. Doc. No. 101-1 at 31–32; Doc. No. 102 ¶ 64a; Doc. No. 105-1 at 2. There is no evidence suggesting these incidents did not happen or that Vaks's superiors secretly believed her to be collegial, such as would indicate pretext.

The record also contains complaints from numerous other LumiraDx employees about Vaks. These complaints, some of which are quite detailed, describe Vaks as having little respect for the opinions of others, Doc. No. 86-7 at 4–5, as yelling and blowing up at those who question

---

position was eliminated, *see* Doc. No. 102 ¶ 94a, and the same also appears true of the other. *Compare* Doc. No. 86-2 *with* Doc. No. 102-27.

[8] There is little merit to Vaks's argument that Todd Storch was hired as her replacement. His role had significantly greater responsibility than Vaks's ever did. *See* Doc. No. 102-27 (outlining Storch's responsibilities); *see also* 86-2 (organizational chart).

her authority, Doc. No. 86-8 at 11, and as someone willing to lie to cover herself from blame, Doc. No. 86-7 at 2. LumiraDx does not rely on these complaints as evidence to support its collegiality rationale but Vaks nonetheless points to them as evidence of pretext, arguing the complaints were "fabricated" by her colleagues (in retaliation for her whistleblowing) and then "backdated" by LumiraDx to "paper" her file. Doc. No. 101 at 13, 17–18. But <u>nothing</u> in the record supports the conclusion that outside counsel, Quinlan, or LumiraDx fabricated the complaints or encouraged employees to file them. Vaks offers conclusory assertions that these (allegedly false) complaints were filed by her colleagues to punish her for reporting Nagpal's misconduct. *Id.* at 13. But LumiraDx has not used these complaints to explain her termination and so Vaks's allegations are beside the point. Indeed, Vaks's argument would still fail even if LumiraDx had relied on these complaints. To show pretext, she would need to point to evidence that Quinlan knew the complaints were fake. *See Bennett v. Saint Gobain Corp.*, 507 F.3d 23, 31–32 (1st Cir. 2007) (noting that when it comes to employer discipline, "what counts is what the decisionmaker . . . *believed*"). She has none.[9]

Finally, the Court considers Vaks's argument that LumiraDx "never told her about [the] complaints [n]or counselled her, which signifies pretext." Doc. No. 101 at 17. Vaks's own statements contradict this claim. Elsewhere, she writes that Quinlan told her "that people came to him and complained that they 'cannot work with [her].'" Doc. No. 102 ¶ 41a. And while still employed at LumiraDx, Vaks wrote an email referencing her colleagues' complaints. Doc. No.

---

[9] When asked at argument what evidence she had that Quinlan knew these complaints were false, Vaks recounted a private conversation between her and Quinlan in which he stated he did not believe the complaints. As Vaks conceded at argument however, this statement is not documented in the record.

86-3. Her claim that she was never told about these complaints is meritless. The same is true of

her remaining pretext arguments, all of which are equally without merit.[10]

In the end, context matters. LumiraDx hired Vaks in late 2016 when she was sixty-one or

sixty-two years old. The fact that LumiraDx hired Vaks when she was already into her sixties

does not itself prove a lack of animus. But it cuts against Vaks's claim because "it is unlikely a

supervisor would hire an older employee and then discriminate [against that employee] on the

basis of age." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470 (8th Cir. 2011) (citation omitted).

Shortly after she was hired, Vaks was given greater management responsibilities. Soon

thereafter, Vaks began to butt heads with some of her colleagues—leading to reductions in

supervisory authority, a write up, and threats of termination. In late 2017, LumiraDx decided to

---

[10] The record does not support Vaks's claim LumiraDx failed to investigate her complaints against her coworkers. Doc. No. 101 at 17–19. Her complaints were investigated and dismissed. Doc. No. 86 ¶ 19. Nor has LumiraDx has provided contradictory information regarding this investigation—the documents Vaks cites reveal no contradiction. *See* Doc. No. 102 ¶¶ 2a, 77a, 79a.

In tension with the above, Vaks also argues LeBlanc's investigation cleared her of wrongdoing. Even if that were true, Vaks's supervisors had independent grounds, apart from her colleagues' complaints, for concluding that Vaks was difficult to work with. The same logic disposes of Vaks's argument that the gap between when her colleagues' complaints and her ultimate termination evinces pretext.

Vaks complains she was written up for Armstrong's misconduct, demonstrating pretext. Doc. No. 101 at 18. But Quinlan's write up discusses only actions taken by Vaks. Doc. No. 105-1 at 2.

It is unclear how LumiraDx's alleged lack of a hiring policy constitutes "a discriminatory practice." Doc. No. 101 at 20. Even if this were true, the Court does not understand why the absence of a *hiring* policy would be relevant to Vaks's *termination*.

Vaks's argument that Quinlan "fabricated" the conclusion she was not technically skilled is based on a gross distortion of the record. Vaks may have only had three direct reports, but one of those direct reports managed the engineers discussed in Quinlan's report. *See* Doc. No. 86-2; Doc. No. 87-4.

Finally, Vaks argues a jury could infer pretext from LumiraDx's alleged failure to comply with the Older Worker Benefits Protection Act of 1990 (OWBPA), 29 U.S.C. § 626(f)(1). Vaks's briefs do not explain how she believes LumiraDx violated the OWBPA, but she has previously argued that LumiraDx violated certain procedural provisions of the Act. *See* Doc. No. 42 ¶ 75 n.2 (arguing severance waiver was ambiguous). These procedural failings, if indeed they exist, are hardly evidence that LumiraDx terminated Vaks because of her age. *Fife v. Metlife Grp.* is distinguishable: There, the employer deceived the terminated employee by providing false information. *See* 411 F. Supp. 3d 149, 161 (D. Mass. 2019).

implement layoffs in Vaks's department and she was let go on January 4, 2018—a little more than one year after she was hired.

At no point in this litigation has Vaks identified anything suggesting even a whiff of age discrimination. That ends the matter. Vaks may feel she was treated unfairly. She may even feel she has uncovered some discrepancies in LumiraDx's explanations. But courts "may not sit as super personnel departments," *Mesnick*, 950 F.2d at 825, and it is not for the Court to judge whether Vaks was or was not a poor collaborator or whether her termination was or was not a wise business decision. No reasonable jury could conclude that age discrimination was the but-for cause of her termination. Accordingly, summary judgment must enter on this claim.

B.     ADEA Failure to Promote Claim

For the first time since this litigation began, Vaks attempts to raise an ADEA claim for failure to promote. Doc. No. 101 at 5–7. She argues LumiraDx's refusal to promote her to Director or Vice President of Engineering was on account of her age. *See id.* LumiraDx objects that Vaks did not plead a failure to promote claim in her Second Amended Complaint and that even if Vaks is permitted to raise this claim at such a late stage of the litigation, she is unable to make out a prima facie case. Doc. No. 111 at 1–3 (citing Doc. No. 42). Even assuming, without deciding, that this claim is not barred and that Vaks has established a prima facie claim, summary judgment is nonetheless warranted. For the reasons given above, there is no evidence of discriminatory animus and the record amply supports LumiraDx's proffered nondiscriminatory rationales for firing Vaks, rather than promoting her. Summary judgment must enter on this claim.

C.      ADEA Hostile Workplace Claim

Vaks claims that Quinlan subjected her to severe and pervasive workplace harassment on account of her age. To make out an ADEA hostile work environment claim, Vaks must demonstrate that (1) she is forty years of age or older, (2) she was subjected to unwelcome harassment, (3) the harassment was based on age, (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive working environment, (5) the objectionable behavior was both subjectively and objectively offensive, (6) Vaks found it hostile or abusive, and (7) some basis for employer liability has been established. *See Rodriguez-Fonseca v. Baxter Healthcare Corp.*, 899 F. Supp. 2d 141, 151 (D. P.R. 2012).[11]

Vaks has failed to offer any evidence that the harassment she allegedly suffered was on account of her age. As noted above, there is no evidence to suggest that Quinlan (or anyone else at LumiraDx) ever treated Vaks differently on account of her age. Indeed, Vaks herself does not seem to believe that Quinlan harassed her on account of her age. Her Second Amended Complaint is decidedly ambiguous, merely alleging that "Mr. Quinlan for some reason, whether gender, age or nationality or all together, did not like Ms. Vaks or her role, success and popularity in the Company." Doc. No. 42 ¶ 41. In her deposition, Vaks conceded that Quinlan is roughly the same age as herself and that he had never made any comments about her age. Doc. No. 85-1 at 41–42. There is simply no evidence to suggest Quinlan targeted Vaks, if indeed he did, due to her age. Summary judgment is therefore warranted on this claim.

---

[11] At points, Vaks has suggested that the actions of another coworker, Adrian Byng-Clarke, contributed to the creation of a hostile work environment. *See, e.g.*, Doc. No. 102 ¶¶ 38–39. However, Vaks's briefs do not defend her allegations regarding Byng-Clarke and the hostile workplace allegations in her Second Amended Complaint name only Quinlan. Doc. No. 42 ¶ 77; Doc. No. 101 at 16. The Court will therefore only consider Quinlan's conduct. Regardless, the Court notes that Vaks has not offered any evidence that Byng-Clarke targeted her because of her age and would grant summary judgment on this claim even upon consideration of the actions of Byng-Clarke.

D.    ADEA Retaliation Claim

Finally, Vaks claims that her termination was in retaliation for a text she sent to LeBlanc on October 31, 2017—the morning after Quinlan disciplined Vaks for her conduct towards Armstrong. That text message read: "I can no longer tolerate [the] aggressive and abusive behavior of Tom Quinlan who for months harasses me. I am prepared to file a formal complaint with the Company and MCAD/EEOC. Please let me know if you would like to discuss this [matter in] private." Doc. No. 86-4.

The ADEA not only protects employees from adverse actions on account of their age, but also protects them from retaliation because they "opposed any practice" they believed in good faith constituted age discrimination. 29 U.S.C. § 623(d). Once again, absent direct evidence, the *McDonnell Douglas* burden-shifting framework is used. *See Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 425 F.3d 67, 84 (1st Circ. 2005). To succeed, Vaks must show that (1) she engaged in ADEA protected conduct, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between the two. *See Mesnick*, 950 F.2d at 827. The burden then shifts to LumiraDx to articulate a legitimate nondiscriminatory reason for Vaks's termination, after which Vaks may attempt to demonstrate the proffered rationale is simply a pretext to cover up the fact she was terminated because of her protected activity. *Id.*

The Court assumes, without deciding, that Vaks engaged in protected conduct (sending the text) and that she was subject to an adverse action (termination). To demonstrate the element

of causation, Vaks points to the fact she was terminated just two months[12] after she threatened to

approach the EEOC regarding Quinlan's alleged discrimination. Doc. No. 101 at 15–16.[13]

Courts have occasionally inferred causation when faced with a two-month period

between protected conduct and an adverse action. *See, e.g.*, *Mariani-Colon v. Dep't of Homeland*

*Security*, 511 F.3d 216, 224 (1st Cir. 2007) (holding plaintiff's termination two months after

filing of complaint established causation). However, the inference of causation is attenuated after

a gap of two months such that "[c]hronological proximity does not by itself establish causality,

particularly if '[t]he larger picture undercuts any claim of causation.'" *Ramirez Rodriguez*, 425

F.3d at 85–6 (second alteration in original) (holding employee terminated two months after

discrimination complaint had not established causation given facts justifying termination)

(quoting *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003)).

The larger picture is that LumiraDX viewed Vaks as a disruptive employee who, when

she sent the October 31st text message, had reason to know that she may soon be terminated.

Indeed, Quinlan had held a disciplinary meeting with Vaks the day before and had threatened to

---

[12] Vaks states she was terminated just "25 business days" after her text. Doc. No. 101 at 15. The truth is that Vaks sent her text message on October 31, 2017 and was terminated on January 4, 2018, meaning the text message preceded her termination by more than two months. Factoring in LumiraDx's winter holiday, weekends, and all recognized federal holidays, there were thirty-eight business days between Vaks's text message and her ultimate termination.

[13] Vaks also suggests that the decision to terminate her was really made "[i]mmediately after receiving [her] complaint," Doc. No. 102 ¶ 57a, indicating retaliatory animus. She bases this on evidence that Quinlan, the day after her text, began the process of hiring a Director or Vice President of Engineering, *id.*, and by pointing to inconsistencies in the metadata of her October 30th write up to speculate that it may have been written after, rather than before, her October 31st text message. Doc. No. 92 at 11–12; Doc. No. 101 at 8–9, 13. Vaks is right that the metadata provided by LumiraDx is inconsistent. The write up documents a meeting which occurred on October 30, 2017, Doc. No. 105-1 at 2, but the write up's metadata states that it was created (or last modified) before the meeting, at "10/30/2017 0:00." Doc. No. 73-21 at 7. All the Court can conclude from this, however, is that the metadata is incorrect—there is no evidence to suggest that the document was created on October 31, 2017. Vaks's only evidence that the decision to terminate her was made immediately following her text is that Quinlan began the search for a Director or Vice President of Engineering at around that time. This is insufficient to establish the inference Vaks seeks, let alone to establish causation.

fire her. Doc. No. 101-1 at 32. As discussed above, Quinlan had reason to view Vaks as a caustic influence in the workplace. Many of her coworkers submitted written complaints about her behavior and at least two refused to work with her. Given this context and the passage of two months between her text and her termination, the mere fact Vaks raised a generalized concern of discrimination "without more, cannot be sufficient to take [her] retaliation case to the jury." *Mesnick*, 950 F.2d at 828.

Nor would Vaks ultimately benefit from establishing causation, even if she were able. The Court has already concluded that Vaks has failed to show that LumiraDx's proffered collegiality rationale is pretextual. Thus, her prima facie claim (even if established) would fail at the third stage of the *McDonnell Douglas* burden shifting framework. For all these reasons, LumiraDx is entitled to summary judgment on this claim.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, LumiraDx's Motion for Summary Judgement (Doc. No. 83) is ALLOWED.


SO ORDERED.


 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge